Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ENID DE LOS ÁNGELES PAGÁN LOUBRIEL, JOE DÍAZ HERNÁNDEZ<br><br>Apelante<br><br>V.<br><br>OFICINA DE PERMISOS (OGPe) DEL DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; IVELISSE JIMÉNEZ LÓPEZ<br><br>Apelada | KLAN202301152 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm.: OR2022CV00145<br><br>Sobre: SENTENCIA DECLARATORIA/ INJUNCTION; REVOCACIÓN DE PERMISO DE CONSTRUCCIÓN |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 4 de septiembre de 2024.

Los apelantes, Enid de Los Ángeles Pagán y Joe Díaz Hernández, solicitan que revoquemos la Sentencia en la que el Tribunal de Primera Instancia desestimó la demanda con perjuicio.

La apelada, Ivelisse Jiménez López, presentó su oposición al recurso. La Oficina de Permisos también hizo lo propio.

El 21 de junio de 2024 acogimos la transcripción conforme las objeciones propuestas y concedimos un término a la apelada para enmendar su alegato en oposición al recurso.

El 9 de julio de 2024, la apelada presentó *Alegato suplementario.*

El 10 de julio de 2024, la Oficina de Gerencia de Permisos (OGPe) presentó *Alegato enmendado de la Oficina de Gerencia de Permisos.*

Los hechos que anteceden la controversia ante nos son los siguientes.

Número Identificador

SEN2024 _____

**I**

La parte apelante presentó una demanda de sentencia declaratoria, injunction y revocación de permiso de construcción contra la Oficina de Gerencia de Permisos (OGPe), el Departamento de Desarrollo Económico y Comercio, la Junta de Planificación e Ivelisse Jiménez López. Se solicitó el injunction al amparo del Art. 14.1 de la Ley de Reforma de Permisos, Ley Núm. 161-2009. La parte apelante en su escrito intitulado *Demanda* alegó que: la apelada construyó un muro y verja de hormigón en la colindancia de la apelante sin los permisos requeridos.[1] La apelante presentó una querella ante la Junta de Planificación en la que alegó que la construcción era ilegal en violación de la legislación, reglamentación aplicable y sus derechos propietarios. La agencia, luego de una visita a la propiedad constató la ilegalidad de la obra y emitió una notificación de hallazgos y orden de mostrar causa y, posteriormente, un informe de investigación en el que reiteró y amplió sus hallazgos contra la apelada.[2] La Junta paralizó el trámite, porque la apelada notificó de forma ex parte que presentaría una solicitud de legalización en la OGPe.[3] La solicitud de legalización incumplió con la ley, porque no se notificó a los colindantes y no se puso el rótulo de presentación.[4] El permiso es contrario a la Ley para la Reforma de Permisos de PR y el Reglamento Conjunto porque la construcción excede la altura permitida.[5]

Los apelantes plantearon que: (1) la construcción era un adefesio ilegal que deprecia y representa un peligro y amenaza para su propiedad y (2) que el muro contenía materiales como zinc y madera que representaban un peligro y amenaza inminente,

---

[1] Entrada núm. 1 del Sistema Unificado de Manejo de Casos (SUMAC), Demanda, alegación núm. 7.

[2] Entrada núm. 1 SUMAC; Demanda, alegación núm. 8 y 19.

[3] Entrada núm. 1 SUMAC; Demanda, alegación núm. 11 y 17.

[4] Entrada núm. 1 SUMAC; Demanda, alegación núm. 17.

[5] Entrada núm. 1 SUMAC; Demanda, alegación núm. 20.

máxime en la temporada de huracanes. Por ello, la parte apelante pidió la revocación del permiso y la demolición del muro construido en exceso a la altura establecida en ley.

La OGPe en su alegato en oposición al recurso presentado ante este foro alegó que, la obra se legalizó mediante una solicitud de permiso de construcción, presentada al amparo de la Ley de Certificación de Planos y Proyectos, Ley Núm. 135 de 1967. Según la OGPe, la apelada cumplió con las condiciones establecidas en la Notificación de Requisitos para Aprobación de Permiso de Construcción. Por último, alegó que la revocación de las determinaciones finales de la OGPe únicamente procedía si se prueba fraude, dolo, engaño, extorción o la comisión de algún delito en el otorgamiento del permiso. Además, expuso que debían exponer detalladamente las actuaciones fraudulentas.[6]

La apelada alegó que contrató un profesional que preparó los planos de la propiedad y solicitó el permiso para legalizar la obra.[7]

El TPI determinó que los términos para cuestionar la legalidad del permiso estaban vencidos. No obstante, advirtió que la Oficina de Gerencia de Permisos tenía que verificar, si la construcción cumplió con el permiso.[8]

Así las cosas, la parte apelante presentó una moción de sentencia sumaria, en la que alegó que la apelada incumplió con el permiso de construcción, con la ley y el reglamento aplicable y pidió la demolición del muro. Según la apelante, era un hecho incontrovertido que, la información provista en la solicitud de permiso era incorrecta y falsa y que conllevaba la nulidad del permiso. Además, adujo que no existía controversia de que el muro excedía la altura permitida. Ante ello, la apelante solicitó la

---

[6] Véase, Alegato de la OGPe,
[7] Véase, Sentencia en su relación de hechos intitulada como Trasfondo Procesal.
[8] Véase, entrada núm. 55 en SUMAC; MINUTA registrada para CONTINUACIÓN DE VISTA celebrada por ELÍAS RIVERA FERNÁNDEZ el 19 de octubre de 2022.

revocación del permiso o en la alternativa que la apelada cumpliera con la altura legalmente establecida, empañetara la construcción del lado de la apelante y removiera las planchas de zinc y galvalume.

La apelada se opuso a la moción de sentencia sumaria y alegó que la apelante pretendía utilizar el recurso de injunction, para obtener una revisión del permiso, lo cual no realizó dentro del término jurisdiccional.

Examinadas ambas posturas, el TPI, mediante Resolución[9], declaró No Ha Lugar una moción de sentencia sumaria presentada por la apelante, porque concluyó que existía controversia real y sustancial sobre los hechos materiales del caso. El foro primario determinó que, no podía atender la solicitud de demolición, porque la investigación de la Oficina de Gerencia era inconclusa, y no contaba con prueba que le mereciera crédito sobre la altura del muro o verja. Sobre el particular, especificó que, el ingeniero David Jordán efectuó un pobre servicio en aclarar o identificar las áreas del muro en incumplimiento con el máximo de altura permitido y que, por lo tanto, la nulidad del permiso estaba en controversia por falta de prueba. El tribunal aclaró que no estaba cuestionando la validez o legalidad del permiso otorgado, pues entendía que el término para solicitar la revisión del permiso había expirado. No obstante, distinguió el juzgador que otra cosa era alegar que el permiso era nulo. Resolvió que la apelante no había aportado prueba de la nulidad del permiso, pero la apelada tampoco había puesto en posición al tribunal de adjudicar, pues ni siquiera había presentado la oposición conforme requería la Regla 36 de Procedimiento Civil, *supra*.

Así las cosas, el foro primario realizó el juicio en su fondo el 2 y 23 de octubre de 2023. Del examen del Informe Preliminar entre

---

[9] Véase, Resolución de 13 de abril de 2023, notificada el 14 de abril de 2023, entrada SUMAC núm. 72.

Abogados y a la luz de las determinaciones de hecho emitidas en ~~de~~ la Resolución, mediante la cual denegó la adjudicación de forma sumaria, el TPI detalló las siguientes determinaciones de hecho en su Sentencia. La apelada es dueña de la propiedad donde ubica el muro o verja objeto de esta controversia. Durante el verano del 2020, inició la construcción de un muro y verja en hormigón en la colindancia con la apelante. El 8 de octubre de 2021, la OGPe emitió el permiso 2021-3889869-POOC-017250.[10]

Conforme la prueba y los testimonios presentados durante el juicio en su fondo, también consignó en su Sentencia los hechos a continuación:

1. David Jordán Rivera es ingeniero con número de licencia 18155, que trabaja con la OGPe (antes la "Administración de Reglamentos y Permisos") desde el 1995.

2. Jordán Rivera se desempeña como Gerente de Permisos en la Oficina Regional de Arecibo de la OGPe.

3. Jordán Rivera preparó un Informe de Inspección con fecha del 28 de noviembre de 2022. El propósito del informe era revisar los parámetros de altura del muro de colindancia objeto del permiso de construcción.

4. Jordán Rivera testificó que midió la altura del muro o verja desde la propiedad de Pagán Loubriel y de Jiménez López. Según estableció en su Informe de Inspección, las medidas se tomaron en intervalos de unos 3 a 4 metros de distancia y aproximadamente en las mismas áreas por ambos lados.

5. Según surge en el informe de inspección, el ingeniero testificó que existe una diferencia de la verja entre las propiedades de la demandante y la demandada, debido a que del lado de la demandante se considera una verja y, del lado de la codemandada, se considera una verja sobre un muro de contención de terreno.
6. Según declarado por el ingeniero, existe una diferencia de más de 4 metros entre las propiedades de Pagán Loubriel y Jiménez López. Jordán Rivera testificó que según la inspección realizada y el informe, por las condiciones del terreno era necesaria la edificación del muro de contención en la parte lateral y posterior a la residencia para la estabilización de los terrenos.

7. Jordán Rivera testificó que la parte que se define como verja es la que no se utiliza para contención del

---

[10] Véase, Sentencia de 1 de noviembre de 2023, notificada el 2 de noviembre de 2023, entrada SUMAC núm. 114.

terreno, específicamente la verja medida desde la propiedad de Pagán Loubriel.

8. Jordán Rivera declaró que observó que en la mayoría de la verja edificada existen planchas de zinc y galvalum.[11]

Otros hechos basados en el testimonio de Jordán son los siguientes:

9. Jordán Rivera declaró que según el plano preparado por el Ing. Colón Cartagena, no sabe si las medidas establecidas en dicho plano se tomaron desde el muro.

10. Jordán Rivera declaró que para la preparación del informe de inspección, éste validó la información que surgía en el expediente del permiso de construcción objeto de este caso.

11. En el contrainterrogatorio, Jordán Rivera testificó que las planchas de galvalum y zinc adheridas a la verja no forman parte del muro de colindancia objeto del permiso de construcción otorgado por la OGPe.

12. Jordán Rivera declaró en el contrainterrogatorio que las medidas que corresponden a la altura del muro o verja que surgen en su informe de inspección, se tomaron en consideración las planchas de galvalum y zinc adheridas al muro o verja objeto de esta controversia.[12]

La sentencia apelada incluye las siguientes determinaciones de hechos basadas en el testimonio de Nitza Segarra:

13. Nitza Segarra funge como técnico en la OGPe y fue quien evaluó y validó la documentación que surge del expediente del permiso de construcción otorgado por la agencia.

14. La señora Segarra declaró sobre los documentos que incluyeron la solicitud de permiso de construcción. Específicamente, declaró sobre las Especificaciones Generales, la Notificación de Hallazgos y Orden de Mostrar Causa emitida por la Junta, el Memorial Explicativo, el Contrato de Designación de Obras y la Certificación del Proyectista y el Permiso de Construcción aprobado por la OGPe.

15. La señora Segarra declaró en el contrainterrogatorio que en la otorgación del permiso de construcción no medio fraude, dolo, engaño, extorsión, soborno, o la comisión de algún delito.

16. La señora Segarra testificó en el contrainterrogatorio que se reafirmaba que el permiso

---

[11] Véase, Sentencia de 1 de noviembre de 2023, notificada el 2 de noviembre de 2023, entrada SUMAC núm. 114, determinaciones de hecho 1 a 8.
[12] *Id*, determinaciones de hecho 9 a 12.

de construcción cumple con las leyes y reglamentos de planificación aplicables.[13]

El testimonio del ingeniero Colón Cartagena fue incluido en las determinaciones de hecho. Según el TPI:

17. El Ing. Edwin Colón Cartagena es ingeniero civil con 48 años de experiencia en la práctica de la ingeniería.

18. El Ing. Colón Cartagena declaró que preparó los documentos y planos que surgen en el expediente del permiso de construcción objeto de esta controversia.

19. El Ing. Colón Cartagena declaró que el propósito para el cual fue contratado era para legalizar la construcción del muro en la residencia de Jiménez López.

20. El Ing. Colón Cartagena testificó que el sello en el plano y los documentos que surgen en el expediente del permiso de construcción constituye su firma digital. Declaró, además, que para la fecha en que radicó la solicitud de permiso de construcción, su licencia de ingeniero estaba vigente.[14]

Igualmente consta lo siguiente en las determinaciones de hecho, respecto al testimonio de la demandante.

22. Pagán Loubriel declaró que presentó la querella número 2020-SRQ-005560 ante la Junta por motivo de la construcción de una verja por parte de Jiménez López.

23. En la querella, Pagán Loubriel alegó que la construcción del muro se efectuó sin los debidos permisos de construcción y que afecta la visibilidad de su propiedad.[15]

Por último, el TPI incluyó en la sentencia los hechos siguientes que determinó del testimonio de Héctor Pérez Jiménez:

24. Héctor Pérez Jiménez (en adelante "Pérez Jiménez") es empleado de la Junta de Planificación y se desempeña en calidad de agente. Como tal, realiza análisis previo a investigaciones sobre casos de obras o construcciones para conocer si tienen o no permiso, multas u órdenes. También redacta informes de investigación como resultado de las inspecciones realizadas.

25. Pérez Jiménez inspeccionó la propiedad de la demandada Jiménez López en varias ocasiones como resultado de la querella presentada por Pagán Loubriel.

---

[13] *Id*, determinaciones de hecho 13 a 16.
[14] *Id*, determinaciones de hecho 17 a 20.
[15] *Id*, determinaciones de hecho 22 a 23.

26. Como resultado de las inspecciones a la propiedad de Jiménez López, Pérez Jiménez redactó un Informe de Investigación del 18 de febrero de 2022. Anteriormente el propio Pérez redactó un primer informe de investigación como resultado de la primera inspección realizada a la residencia de Jiménez López por motivo de la construcción del muro o verja.

27. Según el testimonio del agente de la Junta, el propósito de la segunda inspección e informe de investigación de 18 de febrero de 2022 era para realizar una visita de seguimiento sobre el cumplimiento con el permiso de construcción obtenido por la codemandada Jiménez López.

28. En el contrainterrogatorio, el agente de la Junta admitió que las medidas ilustradas como anejo en su informe de investigación del 18 de febrero de 2022 tomaron en consideración para el parámetro de altura las planchas de galvalum y zinc. **Además, reconoció que considerando las medidas que tomó no sabe si el muro cumple con los parámetros de altura establecidos en el permiso de construcción otorgado por la OGPe.** (Énfasis nuestro).[16]

El TPI dio por hecho que el permiso legalizó la construcción del muro en bloques y hormigón, cuya área es de 46.50 pies cuadrados. El foro primario entendió que no estaba estrictamente ante una solicitud de desestimación, porque la OGPe y la apelada sometieron su caso y renunciaron a presentar prueba. El TPI concluyó que la apelante no presentó prueba para sostener la concesión de remedio alguno.[17] La decisión se fundamentó en la evidencia aquilatada y en su apreciación de los hechos y adjudicación de credibilidad. El foro apelado honró y reconoció la presunción de legalidad que la ley le otorga a los permisos finales expedidos por la OGPe. Por esa razón, determinó que la apelante tenía que demostrar la nulidad, mediante evidencia de fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en su otorgamiento o en la alternativa, que la estructura es un riesgo a la salud o seguridad de la apelante.

---

[16] *Id*, determinaciones de hecho 24 a 28.
[17] Véase, pág. 8 de la Sentencia apelada.

El foro apelado dio importancia a que el ingeniero Jordán: (1) advirtió que las condiciones del terreno ameritaban la construcción de un muro de contención en la parte lateral y posterior de la residencia de la apelada, (2) la verja es la parte de la construcción que no se usa para la contención del terreno y que en su mayoría está edificada con planchas de zinc y galvalume, (3) validó la información del expediente del permiso de construcción, (4) incluyó las planchas de galvalume y zinc en la medida de la altura y (5) no pudo determinar si se cumplió con la ley. Por último, el tribunal le otorgó credibilidad al testimonio de la señora Segarra, el cual validó la documentación del expediente del permiso de construcción y estableció que no medió fraude, dolo, engaño, extorción, soborno o delito. Por consiguiente, declaró NO HA LUGAR la demanda y desestimó la reclamación sin perjuicio y sin imposición de costas ni honorarios de abogado.

El foro primario concluyó que la apelante no derrotó la presunción de corrección del permiso, porque no demostró que fue obtenido mediante fraude, dolo, engaño, extorsión, soborno o la comisión de otro delito, ni que la construcción es un riesgo a su salud y seguridad.

La apelante presentó este recurso en el que alega que el TPI:

Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al denegar la solicitud de Sentencia Sumaria de los Apelantes sin aquilatar los hechos adecuadamente y ante el incumplimiento de la apelada con lo dispuesto en 36.3 (b y c) la cual fue reiterada en orden del TPI.

Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al desestimar la demanda contra la Junta de Planificación de Puerto Rico a pesar de ser parte indispensable en el caso y máxime cuando se le había ordenado contestar la demanda.

Erró el TPI quien abusó de su discreción al hacer una abstracción de los hechos materiales importantes, no aquilatar los mismos adecuadamente y como consecuencia desestimar la demanda de los Demandantes Apelantes bajo la Regla 39.2 de Procedimiento Civil.

Erró el TPI al no concluir que el permiso de construcción es nulo dado que se violaron las disposiciones contenidas en la Ley 161-2009, el Reglamento Conjunto vigente y las condiciones generales y específicas contenidas en el mismo.

## II

Nuestro esquema probatorio otorga gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que realiza el juzgador del foro primario. Como norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro. Tal deferencia obedece a que es el TPI el foro que mejor conoce las particularidades del caso, tiene el contacto con los litigantes y examina la prueba presentada por estos. *Citibank NA v. Cordero Badillo,* 200 DPR 724, 735-736 (2018). Por eso, el foro de instancia es el que está en mejor posición para tomar las medidas para cimentar el curso a trazar en el caso hasta su disposición final. *IG Builders et al. v. BBVAPR,* 185 DPR 288, 307 (2012).

Los tribunales revisores únicamente podremos sustituir el criterio del foro primario por el nuestro, en circunstancias extraordinarias en las que se pruebe que actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho. *Citibank NA v. Cordero Badillo,* supra, pág. 736.

Un tribunal incurre en abuso de discreción, cuando el juez ignora sin fundamento algún hecho material, le concedió demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Citibank NA v. Cordero Badillo,* supra, pág. 736; *Pueblo v. Custodio Colón,* 192 DPR 567, 589 (2015).

**La Moción de Desestimación por la Prueba**

La Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V, permite que la parte demandada solicite la desestimación de la demanda, luego de que el demandante presente su prueba. El demandado deberá alegar que el demandante no tiene derecho a la concesión de ningún remedio bajo los hechos probados en ese momento y la ley existente. El demandado no renuncia a presentar prueba, si la solicitud de desestimación es denegada. El tribunal deberá aquilatar y formular su apreciación de los hechos, luego de que la demandante presentó su prueba. No obstante, esa facultad se debe adjudicar después de un escrutinio sereno y cuidadoso de la prueba. El tribunal debe determinar, si el demandante presentó prueba suficiente por sí misma para satisfacer los requisitos de su causa de acción. Si el tribunal tiene dudas, deberá requerir a la demandada que presente su prueba. La desestimación se da contra la prueba y dependerá de la apreciación de la prueba que hizo el tribunal. El foro judicial debe ser cuidadoso al atender una moción de desestimación por insuficiencia de la prueba, porque su adjudicación conlleva el final de la reclamación del demandante y de su día en corte. No obstante, la decisión descansa en la sana discreción del Tribunal. Los foros apelativos no intervendremos con la apreciación de la prueba del tribunal de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 916 (2011).

**La Ley de Reforma de Permisos**

La Ley Núm. 161-2009 establece el marco legal y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. **El Art. 9.10, 23 LPRA sec. 9019 (i),** instituye la presunción de corrección y legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Gerencia de Permisos, los Municipios

Autónomos con Jerarquía de la I a V y los profesionales autorizados. No obstante, el permiso deberá revocarse cuando medie **fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, o a condiciones ambientales o arqueológicas.** Las determinaciones finales no podrán ser suspendidas, sin mediar una autorización o mandato judicial de un tribunal competente o del foro correspondiente y en estricto cumplimiento con el debido proceso de ley.

El Art. 14.1, 23 LPRA sec. 9024, viabiliza que una persona privada, natural o jurídica presente una acción de injunction, mandamus y sentencia declaratoria cuando su interés propietario o personal podría afectarse por un permiso, obra o uso. Este recurso extraordinario le permite solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa, (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes o incumpliendo con las disposiciones y condiciones del permiso otorgado, (3) la paralización de un uso no autorizado y (4) la demolición de obras construidas que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permisos de construcción porque nunca lo obtuvieron o fue revocado. La acción podrá ser presentada indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico. La presentación de una querella no impide que una parte adversamente afectada presente un recurso extraordinario por los mismos hechos. No obstante, la presentación de este recurso extraordinario priva de jurisdicción

automáticamente a la agencia administrativa sobre la querella. Cualquier acción de la agencia se entenderá ultra vires.

**Ley de Certificación de Planos**
**Ley Núm. 135 de 15 de junio de 1967, según enmendada**

Las certificaciones expedidas por un ingeniero o arquitecto de conformidad con la ley son suficientes para que la Oficina de Gerencia de Permisos otorgue el permiso correspondiente. Además, constituyen evidencia pima facie de que la obra se construyó de acuerdo con los planos, especificaciones y el permiso otorgado. Exposición de Motivos, Art. 2, 23 LPRA sec. 42b. No obstante, la ley establece sanciones económicas y penalidades, incluyendo cárcel, para los ingenieros y arquitectos que voluntariamente ofrezcan información falsa, presenten un diseño que no se ajuste a los reglamentos, indiquen hechos o dimensiones que no son ciertos o son incorrectos o son falsos o que oculten información para obtener el permiso. Art. 7, 23 LPRA sec. 42g.

**Reglamento Conjunto**

La Regla 8.3.2, sección 8.3.2.1, inciso (b) del Reglamento Conjunto de 2019, vigente al momento de los hechos, dispone que las verjas en los patios laterales o posteriores requeridas podrán tener una altura no mayor de dos metros.

**III**

La apelante alega en el segundo señalamiento de error que la Junta de Planificación es una parte indispensable. Según la apelante, la Junta es la entidad gubernamental facultada a auditar y fiscalizar los permisos finales y las certificaciones y, en este caso, señaló que la construcción no cumplía con la ley.

La apelada aduce que la Junta perdió la jurisdicción conforme lo establece el Art. 14.1 de la Ley 161, *supra.*

El segundo señalamiento de error no se cometió. La apelada tiene razón. El TPI desestimó correctamente la demanda contra la

Junta. La agencia perdió la jurisdicción sobre la querella, automáticamente, con la presentación del recurso extraordinario que presentó la apelante.

La parte apelante cuestiona en los señalamientos de errores uno, tres y cuatro la apreciación de la prueba del TPI y su rechazo a declarar la nulidad del permiso de construcción. Como primer error alega que el TPI debió dictar sentencia sumaria a su favor. Planteó que no aquilató adecuadamente los hechos y que la apelada incumplió con la Regla 36.3 (b) y (c) de Procedimiento Civil, porque no presentó evidencia alguna para controvertir su prueba.

La OGPe aduce que la moción de sentencia sumaria carece de evidencia que apoye la solicitud de revocación del permiso. Al igual que la apelada, sostiene que la apelante no pidió revisión del permiso oportunamente y no demostró su nulidad.

El foro apelado no cometió los señalamientos de errores uno, tres y cuatro.

El TPI no se equivocó cuando denegó la moción de sentencia sumaria. Los cuestionamientos a la denegatoria a la sentencia sumaria son académicos porque el TPI realizó el juicio en sus méritos. No obstante, como cuestión de derecho, la existencia de hechos esenciales en controversia imposibilita la adjudicación sumaria del caso, independientemente de que la apelada haya cumplido o no con la regla. Su incumplimiento no impide atender y resolver la solicitud de sentencia sumaria, porque el tribunal lo que tiene que evaluar y adjudicar es si existe controversia de hechos esenciales y materiales. La prueba que la apelante presentó en apoyo a la moción de sentencia sumaria fue insuficiente para establecer como hechos probados que: (1) el permiso es nulo porque la información provista en la solicitud es incorrecta y falsa y que, (2) el muro excede la altura permitida.

Durante el juicio, la apelante tampoco presentó prueba suficiente para satisfacer los requisitos de una demanda al amparo de los Arts. 9.10 y 14.1, *supra,* que derrote la presunción de corrección del permiso. La apelante no presentó prueba alguna que demostrara que la apelada obtuvo el permiso mediante: (1) información falsa, (2) fraude, (3) engaño, (4) soborno o la comisión de un delito. Por otra parte, en cuanto al planteamiento pronunciado en su cuarto señalamiento de error, tampoco pudo establecer que la otorgación del permiso representa un riesgo a la salud o la seguridad. El expediente está huérfano de la prueba necesaria para que prospere la acción de injunction y sentencia declaratoria a favor de la apelante.

Los informes de inspección del ingeniero David Jordán y de la Junta de Planificación no cumplen con la carga procesal de la prueba que la apelante necesitaba para derrotar la presunción de corrección del permiso. Las planchas de zinc y galvalume que sobrepasan la altura permitida y la mera posibilidad de que su remoción ocasione que la construcción no cumpla con la ley, no son suficientes para conceder el injuction de la Ley Núm. 161, *supra.*

Los testimonios que presentó la apelante no demostraron que existió fraude, engaño o se dio información falsa para obtener el permiso. Aunque durante su testimonio, Jordán dijo que las medidas que tomó no concuerdan con las del plano que sometió la apelada, fue claro en que no podía concluir que el plano tenía información falsa. Véase, págs. 106-107 de la transcripción. El ingeniero Jordán reafirmó lo que expresó por escrito. Si las planchas de galvalume y zinc son removidas hay posibilidad de que la construcción cumpla con la altura reglamentaria. Véase, págs. 109 y 113 de la transcripción. El testimonio de Nitza Segarra, lejos de establecer el fraude, validó la presunción de corrección del permiso.

La testigo declaró que evaluó el expediente y no existía información falsa. Véase, pág. 159 de la transcripción.

El señor Edwin Colón fue el ingeniero que certificó la obra para legalizar la misma. Preparó los documentos y el plano para solicitar el permiso de construcción. Véase, pág. 175 del apéndice. El testigo reconoció que tenía copia del informe en el que la Junta de Planificación concluyó que la construcción sobrepasaba la altura permitida. No obstante, dijo que concluyó de forma distinta, porque fue lo que obtuvo en el plano. Véase, pág. 183 de la transcripción. El ingeniero declaró que fue al campo y tomó las medidas junto a su delineante. Véase, pág. 184 de la transcripción. El testigo reconoció que el muro ya estaba construido, cuando intervino en el caso. Véase, pág. 385 de la transcripción. Sin embargo, de su testimonio surge que se cumplió con los códigos de construcción vigente. El testigo dijo que se reunió con el constructor, que el muro tenía viga y columnas con bloque y cumplía con las medidas de los estándares de construcción. Véase, pág. 187 de la transcripción. Por último, explicó que firmó el contrato que suscribió con la apelada digitalmente. Véase, pág. 189 de la transcripción.

El testimonio de la apelante tampoco cumplió con los requisitos para que prospere una causa de acción al amparo del Art. 14.1 de la Ley 161, *supra.* La apelante declaró que presentó una querella en la Junta de Planificación porque los padres de la apelada pusieron unas planchas de zinc como verja y comenzaron a construir un muro de cemento. Véase, pág. 209 de la transcripción. Según la apelante, nunca vio rótulo de construcción. Véase, pág. 217 de la transcripción. La señora Pagán declaró que el valor de su casa se afectó por la construcción y que su propiedad no puede verse de la carretera. Véase, pág. 218 de la transcripción. La apelante dijo que no está segura de que el muro este bien hecho y que tiene temor de que ceda. Véase, pág. 220 de la transcripción. Según la apelante,

en las fotos se evidencia el desastre, el cemento disparejo todo chamuscado y sin consistencia y cómo el zinc afea el muro. Véase, págs. 231 y 235 de la transcripción. Sin embargo, no pudo apreciar en las fotos, la construcción de un muro de contención. Véase, pág. 232 de la transcripción. La apelante explicó que la apelada tuvo que hacer un muro alto, porque cortaron el terreno. Véase, pág. 233 de la transcripción. No obstante, declaró que el muro estaba muy mal construido. Véase, pág. 237 de la transcripción. La apelante admitió que la Oficina de Gerencia denegó su solicitud de intervención, porque ya había otorgado el permiso. Véase, pág. 243 de la transcripción.

Durante su testimonio, la apelante declaró que como el muro está construido, lo que quiere es que: (1) cumpla con los seis pies, (2) su casa se vea de la calle y (3) quiten las planchas de zinc. Véase, pág. 237-238 de la transcripción.

El testimonio de Héctor Pérez Jiménez tampoco derrotó la presunción de corrección del permiso de construcción. Este testigo fue quien preparó los informes de la Junta de Planificación. El resumen de su testimonio es el siguiente. Durante su primera visita tomó las fotos desde la carretera. Véase, págs. 268-269 de la transcripción. Su segunda visita fue para confirmar si se cumplió con el permiso. Véase, pág. 271 de la transcripción. Durante la primera visita encontró que la construcción excedía los dos metros de altura. Véase, págs. 273 y 275 de la transcripción. Las medidas incluyeron las planchas de zinc y galvalume. Véase, págs. 289-290 de la transcripción. Según el informe de investigación, la construcción violó la Regla 8.3.2 del Reglamento Conjunto. Véase, pág. 293 de la transcripción. Durante la segunda visita, posterior a la otorgación del permiso, no encontró violación a las condiciones del permiso ni información falsa. Su búsqueda en el sistema evidenció la existencia de un permiso de construcción consolidado

para la legalización y construcción de un muro de la colindancia. Véase, págs. 299-301 de la transcripción. Durante la segunda visita encontró que existían áreas que excedían los dos metros. Véase, pág. 320 de la transcripción. El único incumplimiento que encontró fue la altura. Véase, pág. 373 de la transcripción.

Pérez Jiménez admitió que: (1) el permiso se otorgó para la construcción de una verja de bloque y hormigón, (2) no permite planchas de zinc ni galvalume (pág. 302 de la transcripción), (3) consideró las planchas en las medidas (pág. 307 de la transcripción), (4) no tomó las medidas del muro en bloque y hormigón (págs. 308-309 de la transcripción), (5) no podía establecer si se cumplió con el permiso (pág. 326 de la transcripción).

El foro apelado no erró en su apreciación de la prueba. La apelante no presentó prueba suficiente por sí misma, para satisfacer una causa de acción basada en el Art. 14.1 de la Ley Núm. 161, *supra.* No obstante, corresponde determinar si la construcción que realizó la apelada es conforme al permiso de construcción. Sin lugar a duda, las planchas de zinc y de galvalume adheridas a la construcción, la falta de empañetado y el uso de bolsas y papel entre los bloques no son cónsonos con el permiso. La prueba presentada puso en duda si la construcción cumplió con la altura requerida. El propio personal de la Oficina de Permisos no pudo determinar, si la construcción cumplió con el requisito de altura. El ingenio David Jordán no pudo establecer cuál era la altura de la construcción. El testigo se limitó a declarar que era probable que cumpliera con la altura requerida, si se removían las planchas de zinc y galvalume. Las fotos admitidas como evidencia nos crean una preocupación sobre si la construcción es segura y no representa un riesgo para la seguridad de la apelante y de la propia apelada. Nuestra preocupación se intensifica porque el ingeniero Jordán declaró que

las condiciones del terreno ameritaban la construcción de un muro de contención para darle estabilidad.

**IV**

Por las razones expuestas se confirma la sentencia apelada en lo que respecta a adjudicar la validez del permiso de construcción. No obstante, se modifica, para ordenar a la apelada a: (1) quitar todas y cada una de las planchas de galvalume y todas las planchas de zinc que puedan quedar, (2) empañetar toda la construcción por el lado de la apelante, (3) remover las bolsas y papeles que puso entre bloques, (4) contratar un ingeniero estructural que certifique que toda la construcción del muro cumple con los dos metros de altura que permite la ley. La apelada deberá cumplir con lo ordenado a su exclusivo costo, inmediatamente, sin excusas, ni dilación alguna.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Domínguez Irizarry concurre por no estar conforme con los fundamentos expuestos en la Sentencia.

El Juez Pérez Ocasio concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones